
Case 6:15-cv-00887-KNM   Document 1   Filed 10/06/15   Page 1 of 10 PageID #: 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DALTON SMITH, | § | |
| | § | |
| *Plaintiff*, | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | |
| KILGORE COLLEGE and | § | |
| DR. WILLIAM HOLDA, in his | § | |
| Individual and official capacities | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff, Dalton Smith, complains of Defendant, Kilgore College, as follows:

**I.**

**Parties**

1. Plaintiff, Dalton Smith, is an individual residing in Smith County, Texas. At all relevant times, he was a public employee of Kilgore College.

2. Defendant, Kilgore College, is a publicly supported, two-year junior college with its principal office located in Gregg County, Texas. It may be served with citation by serving its President, Dr. William Holda, 1100 Broadway, Kilgore, TX 75662.

3. Defendant, Dr. William Holda, is an individual defendant and Kilgore College's President. He may be served with process at his place of business, Kilgore College, 1100 Broadway, Kilgore, TX 75662.

**II.**

**Jurisdiction and Venue**

**Plaintiff's Original Complaint and Jury Demand – Page 1**

4. This Court has jurisdiction over Mr. Smith's claims under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Mr. Smith's Texas Whistleblower Act claims under 28 U.S.C. § 1367 because these claims are so related to his federal claims that they form part of the same case and controversy. The factual bases of Mr. Smith's Texas Whistleblower Act claims, which support jurisdiction, are detailed in the paragraphs below and incorporated here by reference.

5. A substantial portion of the acts and omissions giving rise to Mr. Smith's claims occurred at Kilgore College's campus in Gregg County, Texas. Venue is proper in this district and division under 28 U.S.C. § 1391.

## III.

## Background Facts

6. This case involves Kilgore College's violations of Mr. Smith's rights under the Texas Whistleblower Act, and its deprivation of his Constitutional rights to Free Speech.

7. Kilgore College is a publicly supported, two-year junior college with campuses in Kilgore and Longview. Dr. Holda has served as Kilgore College's President during its violations of Mr. Smith's rights.

8. Kilgore College employed Mr. Smith for thirteen years before unlawfully terminating his employment effective August 31, 2015. Before this termination, Mr. Smith was Director of Physical Plant Kilgore College, later renamed Coordinator of Facilities. He was responsible for all of Kilgore College's facilities in this role and supervised a team of maintenance employees.

9. Airborne asbestos is a health risk. The Texas Asbestos Health Protection Act acknowledges that exposure to *any* concentration of airborne asbestos involves risk.[1] Consequently, it requires that individuals removing asbestos from, or encapsulating or enclosing asbestos in a public building receive proper training and hold special licenses.[2] And, it requires that unlicensed individuals cannot "transport an asbestos-containing material from a facility for disposal."[3] It also mandates that a licensed, trained "asbestos abatement supervisor" must design and prepare abatement project plans in a public building, and monitor its implementation.[4]

10. The Texas Department of State Health Services implements the Act's provisions through its Asbestos Health Protection Rules.[5] These Rules explicitly recognize the serious health effects of exposure to asbestos fibers:

> In more than 25 years of research into the relationship between airborne asbestos fibers and the diseases such exposure can cause, the bodily mechanism by which inhaled asbestos fibers initiate cancer or asbestosis is still not understood, no effective treatment has been found, and the only means of preventing asbestos depends on limiting the exposure of the individual to asbestos fibers.[6]

Recognizing the grave health concerns, the TDSHS promulgated rules to control and minimize the public's and workers' exposure to asbestos fibers.[7]

11. Among other things, these Rules set licensing and procedure protocols applicable to public buildings, which are buildings "subject to public occupancy, or to which the

---

[1] *See* Tex. Occ. Code Ann. § 1954.052(b) (Vernon 2003).
[2] *See id.* at § 1954.101(1)-(2).
[3] *Id.* at § 1954.101(9).
[4] *See id.* at § 1954.101(2) & (7).
[5] *See* 25 Tex. Admin. Code § 295.
[6] *Id.* at § 295.31(a).
[7] *See id.* at § 295.31(b).

**Plaintiff's Original Complaint and Jury Demand – Page 3**

general public has access."[8] These rules apply to workers performing a broad range of asbestos-related activities, including "disturbing, removing, encapsulating, or enclosing any amount of asbestos within public buildings for any purpose, including repair, renovation, dismantling, demolition, installation, or maintenance operations, or any other activity that may involve the disturbance or removal of any amount of asbestos-containing building material (ACBM) whether intentional or unintentional."[9] Further, they incorporate various federal regulations regarding asbestos.[10]

12. Notably, building owners must ensure compliance with these rules.[11]

13. As the owner of public buildings, Kilgore College is responsible for following the rules. Among other things, it must inform workers about the presence and location of ACBM's before the start of any asbestos-related activity;[12] it must locate and abate ACBM's before any renovations;[13] and, it must ensure that properly licensed persons abate the ACBM's.[14]

14. Kilgore College did not follow Texas' rules or the federal rules engrafted into them. Mr. Smith reported Kilgore College's rules violations to the Federal Bureau of Investigation, the Environmental Protection Agency, the Occupational Safety and Health Administration, the Texas Department of State Health Services, and the Texas Commission of Environmental Quality. To each of these bodies, Mr. Smith reported the following violations:

---

[8] *Id.* at § 295.31(c)(1)(A)
[9] *Id.*
[10] *See id.* at § 295.33.
[11] *See id.* at § 295.34(b).
[12] *See id.* at § 295.34(a).
[13] *See id.* at § 295.34(a).
[14] *See id.* at § 295.34(a)(2).

   a. At least five times, Mr. Smith witnessed unlicensed, untrained, and improperly supervised employees abate – over Mr. Smith's objections – asbestos from Dodson Auditorium.  In each instance, no licensed supervisor oversaw the abatements.

   b. After a water leak between Old Main and the Rangerette Gym, a plumbing contractor notified Kilgore College that a pipe covered in asbestos-containing insulation needed abatement and replacement.  Kilgore College received a bid for a proper asbestos survey and abatement, but it decided that following the rules cost too much.  Instead, it directed unlicensed, untrained, and not properly supervised employees to abate the asbestos.  No survey was ever performed.

   c. Similarly, Kilgore College renovated the Laird Memorial Hospital.  After identifying ACBM's in the wall base and flooring in the work area, Kilgore College directed unlicensed, untrained, and not properly supervised employees to sneak into the work area and remove the ACBM's before construction workers arrived.  Ostensibly, this saved the costs associated with a proper abatement under the rules.

   d. Mr. Smith observed that a large number of pipes covered in asbestos-containing insulation had been improperly removed and thrown into a dumpster.  This disposal does not comply with the rules.

   e. Mr. Smith discovered that work areas in Laird Hospital were not properly sectioned off because there was nothing preventing the circulation of asbestos fibers from work areas into other hospital areas through the air handlers.  In other

       words, the air handlers in the work area were not blocked and circulated air between the work area and hospital areas.

    f. A flood in the Fine Arts building's basement ruined the carpet. Kilgore College determined that the carpet rested on asbestos containing tile. It chose to forego a proper survey and abatement and, instead, directed unlicensed employees to remove the carpet and tiles, which was thrown into a dumpster.

    g. To avoid detection by contractors, unlicensed employees improperly abated ACBM's from Old Main's first floor. These employees merely threw the materials into dumpsters.

    h. Employees were directed to dispose of asbestos-containing tabletops from the science building by throwing them into dumpsters. Additionally, they sanded some of these tabletops and painted them to match newer tables. During this time, the work area was not properly contained and, therefore, the building's HVAC circulated these materials.

15. In addition to reporting these activities to appropriate enforcing agencies, Mr. Smith discussed them with his supervisor, Dr. Holda and the Board. He also reported them to local media – including supplying an affidavit to them.

16. After Dr. Holda and Kilgore College's Board of Directors became aware that Mr. Smith was reporting these violations to the above authorities and the media, Kilgore College began retaliating against Mr. Smith and other Physical Plant employees involved in these complaints. For example, before his reports to authorities and the media, Mr. Smith was a supervisor on Kilgore College's main campus. He took an active role in directing and supervising a number of employees. After Kilgore College

learned about his reports, Mr. Smith was stripped of his supervisory role; he was placed in a satellite campus by himself; other employees were directed not to speak with him; other employees were directed not to assist him; he was not permitted to drive onto the main campus without notifying Kilgore College's police force; his keys were taken from him; and, ultimately, Kilgore College terminated him.

## IV.

## Texas Whistleblower Act Claim

17. Mr. Smith repeats and re-alleges the allegations contained in Paragraphs 1 through 16 as if fully stated here.

18. The Texas Whistleblower Act protects public employees who make good faith reports of violations of law by their employer to appropriate law enforcement authorities. Under the Act, employers may not suspend or terminate the employment of, or take other adverse personnel action against, a reporting employee.

19. Mr. Smith reported, among other things, the violations listed above to the FBI, EPA, OSHA, the Texas Department of State Health Services, and the Texas Commission of Environmental Quality. Mr. Smith believed that the above-listed activities violated the federal regulations regarding asbestos handling (including identification, abatement, and disposal). He also believed that they violated the Texas Asbestos Health Protection Act and Asbestos Health Protection Rules. He reported these violations in good faith. And he made his reports to the appropriate law enforcement authorities.

20. As a result of Kilgore College's retaliatory actions, Mr. Smith has suffered and will continue to suffer pecuniary losses, including but not limited to lost wages in the past and future and benefits associated with his employment.

21. Additionally, Mr. Smith has suffered and expects to suffer future pecuniary and non-pecuniary losses, including, but not limited to, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

22. Mr. Smith seeks attorney's fees and costs of suit.

## V.

### First Amendment (Free Speech) Retaliation

### 42 U.S.C. § 1983

23. Mr. Smith repeats and re-alleges the allegations contained in Paragraphs 1 through 16 as if fully stated here.

24. Retaliation by an employer for an employee's speech regarding a matter of public concern is actionable under 42 U.S.C. § 1983.

25. Mr. Smith engaged in constitutionally protected activity – reporting the illegal and unsafe asbestos handling practices to enforcement agencies, superiors, Dr. Holda, the Board of Directors, and local media.  He made these reports to among other things – protect his fellow employees, students, and the public attending events in these buildings from exposure to asbestos.  As a result of this constitutionally protected activity or, in the alternative, motivated at least in part by the constitutionally protected activity, Kilgore College and Dr. Holda terminated him.  Kilgore College's illegal and unsafe asbestos handling practices were a matter of public concern, and

      Mr. Smith's interest in commenting on these practices outweighed Kilgore College's interest in promoting efficiency.

26. As a result of Dr. Holda's individual and official deprivation of Mr. Smith's constitutionally protected rights, Mr. Smith suffered damages.  These damages include compensatory damages for lost earnings in the past and future, loss of benefits in the past and future, out of pocket expenses, loss of reputation, and mental anguish.

27. Further, he seeks recovery of his attorney's fees and all recoverable court costs.

## VI.

### Request for Jury Trial

28. Mr. Smith respectfully requests that this matter be tried before a jury.

## VII.

### Prayer for Relief

29. Mr. Smith respectfully requests that he have a judgment against Kilgore College and Dr. Holda awarding him the following damages:

  a. Actual damages;

  b. Compensatory damages in the maximum amount allowed by law;

  c. Prejudgment and post-judgment interest;

  d. Attorney's fees, expert witness fees, and costs of suit; and

  e. Any further legal and equitable relief he is entitled to.

                                                    Respectfully submitted,

                                                    /s/ *Gregory P. Love*
                                                    Gregory P. Love
                                                    Texas Bar No. 24013060
                                                    **LOVE LAW FIRM**
                                                    P. O. Box 948

        Henderson, Texas 75653
        Telephone: (903) 212-4444
        Facsimile:  (903) 392-2267
        greg@lovetrialfirm.com

        JUSTIN L. JETER
        SBN: 24012910
        **JETER MELDER, LLP**
        6301 Gaston Avenue, Suite 730
        Dallas, Texas 75214
        Telephone: 214.699.4758
        Facsimile: 214.593.3663
        Email: justin@jetermelder.com

        **ATTORNEYS FOR PLAINTIFF**